UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| ROBERT JOHN MOES, | ) | CASE NO. 4:06 CV 490 |
| | ) | |
| Plaintiff, | ) | JUDGE PETER C. ECONOMUS |
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM OF OPINION |
| RICHARD E. MILTON, et al., | ) | AND ORDER |
| | ) | |
| Defendants. | ) | |

On January 23, 2006, pro se plaintiff Robert John Moes filed this in forma pauperis Bivens[1] action in the United States District Court for the Western District of Michigan against Federal Correctional Institution ("FCI-Elkton") Unit Manager Richard E. Milton, Counselor Charles C. Crissman, Remedy Clerk Amy Fusco, Executive Assistant Steve Lake, Associate Warden Brian Hertel, Warden Mark Bezy and all "mail room staff on duty from June 1, 2003-June 4, 2004." (Compl. at 1.) The case was transferred to the United States District Court for the Northern District of Ohio on March 3, 2006. In the complaint, plaintiff alleges that FCI-Elkton mail room staff repeatedly opened legal mail and other mail he considered to be confidential, and failed to cooperate with the grievance process. He seeks monetary damages.

---

[1] Bivens v. Six Unknown Agents, 403 U.S. 383 (1971).

*Background*

Mr. Moes was convicted on January 16, 2001 on charges of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) and was sentenced to a term of incarceration of 72 months. He was transferred to FCI-Elkton on June 1, 2003. He claims that from that day, until he was transferred to FCI-Cumberland on June 4, 2004, FCI-Elkton mailroom staff continually opened mail he believed to be legal in nature and mail which he deemed confidential. He contends he complained repeatedly to his unit manager, Richard Milton, and to Elkton counselor Crissman, but did not obtain relief. He further alleges that both Mr. Milton and Mr. Crissman initially refused to provide him with BP-8.5 or BP-9 grievance forms and when they received the forms, failed to process them. He contends that Mr. Milton and Mr. Crissman violated his First Amendment rights by denying him grievance forms, delayed or impeded his access to the courts by denying him grievance forms and retaliated against him. He further asserts that Ms. Fusco, Mr. Lake, Mr. Hertel, and Mr. Bezy were aware of Mr. Milton and Mr. Crissman's actions and failed to take actions to stop them. Mr. Moes was released from prison in November 2005.

*Analysis*

Although pro se pleadings are liberally construed, Boag v. MacDougall, 454 U.S. 364, 365 (1982) (per curiam); Haines v. Kerner, 404 U.S. 519, 520 (1972), the district court is required to dismiss an in forma pauperis action under 28 U.S.C. §1915(e) if it fails to state a claim upon which relief can be granted, or if it lacks an arguable basis in law or fact.[2] Neitzke v.

---

[2] An in forma pauperis claim may be dismissed sua sponte, without prior notice to the plaintiff and without service of process on the defendant, if the court explicitly states that it is invoking section 1915(e) [formerly 28 U.S.C. § 1915(d)] and is dismissing the claim for one of the reasons set forth in the statute. McGore v. Wrigglesworth, 114 F.3d 601, 608-09 (6th Cir. 1997); Spruytte v. Walters, 753 F.2d 498, 500 (6th Cir. 1985), cert. denied, 474 U.S. 1054 (1986); Harris
(continued...)

Williams, 490 U.S. 319 (1989); Lawler v. Marshall, 898 F.2d 1196 (6th Cir. 1990); Sistrunk v. City of Strongsville, 99 F.3d 194, 197 (6th Cir. 1996). For the reasons stated below, this action is dismissed pursuant to §1915(e).

### Legal Mail

Mr. Moes's primary contention is that FCI-Elkton mail room staff opened various pieces of his legal mail in violation of the First Amendment. Specifically, he claims the letters he received from the following sources were opened outside of his presence:

1. the United States Sixth Circuit Court of Appeals dated May 2, 2003 (this letter is date stamped one month prior to Mr. Moes's arrival at Elkton on June 1, 2003)
2. the United States Sixth Circuit Court of Appeals dated July 15, 2003.
3. the Michigan Attorney Grievance Commission dated Sept. 4, 2003.
4. the United States Office of Government Ethics dated September 4, 2003.
5. the Colorado Department of Regulating Agencies, Board of Medical Examiners dated October 24, 2003.
6. the Michigan Attorney Grievance Commission dated October 30, 2003.
7. the Michigan Attorney Grievance Commission dated Nov. 4, 2003.
8. Corrections Consultant Harvey Cox dated Nov. 7, 2003.
9. the United States Civil Rights Commission dated November 20, 2003.
10. the United States Occupational Health and Safety Agency ("OSHA") dated November 24, 2003.
11. Corrections Consultant Harvey Cox dated Dec. 11, 2003.
12. the Department of Justice Criminal Division dated December 12, 2003.
13. the Colorado Department of Regulating Agencies, Board of Medical Examiners dated 2003 (month and day illegible).
14. the Colorado Department of Regulating Agencies, Board of Medical Examiners dated January 10, 2004.

---

(...continued)
v. Johnson, 784 F.2d 222, 224 (6th Cir. 1986); Brooks v. Seiter, 779 F.2d 1177, 1179 (6th Cir. 1985).

15. the United States Department of Labor dated February 2, 2004.
16. the Office of the District Attorney in Golden Colorado dated February 12, 2004.
17. the Department of Justice Criminal Division dated March 5, 2004.
18. the Michigan Attorney Grievance Commission dated March 2004 (day illegible).
19. U.S. Attorney Phillip Trippi dated April 2, 2004.
20. OSHA dated May 6, 2004.
21. the Department of Justice Office of Professional Responsibility dated May 13, 2004.
22. the National Mediation Board (date illegible).

As an initial matter, many of these letters were opened more than two years before this case was filed. The claims with respect to these letters are barred by the applicable statute of limitations. In addressing the timeliness of a federal constitutional damages action, "the settled practice has been to adopt a local time limitation as federal law if it is not inconsistent with federal law or policy to do so." Wilson v. Garcia, 471 U.S. 261, 266-67 (1985). That practice applies both to § 1983 actions, Bd. of Regents of the Univ. of the State of New York v. Tomanio, 446 U.S. 478, 483 (1980)) and to Bivens actions. Harris v. United States, 422 F.3d 322, 331 (6th Cir. 2005); McSurely v. Hutchison, 823 F.2d 1002, 1005 (6th Cir.1987). In this District Court, Ohio's two year statute of limitations for bodily injury pursuant to Ohio Revised Code § 2305.10 applies to §1983 and Bivens claims to determine when a cause of action is time-barred. LRL Properties v. Portage Metro Housing Authority, 55 F. 3d 1097 (6th Cir. 1995). This action was filed on January 23, 2006. Letters ##1-14 were opened prior to January 23, 2004. Any claims based on these events are therefore time-barred by the applicable statute of limitations period.

While the claims related to the alleged opening of letters ##15-22 are not time-barred, the Court must next determine whether any of these parcels qualifies as "legal mail" under the First Amendment. A prisoner's right to receive mail is protected by the First Amendment, but

4

prison officials may impose restrictions that are reasonably related to security and other legitimate penological objectives. Sallier v. Brooks, 343 F.3d 868, 873 (6th Cir. 2003); see Knop v. Johnson, 977 F.2d 996, 1012 (6th Cir. 1992). Prison officials may open a prisoner's mail pursuant to a uniform and evenly applied policy to maintain prison security. Lavado v. Keohane, 992 F.2d 601, 607 (6th Cir. 1993). When the incoming mail is "legal mail," there is a heightened concern for the First Amendment rights of the prisoner because this type of correspondence may impact the attorney-client privilege, or the right of access to the courts. Sallier, 343 F.3d at 874. In an attempt to accommodate the prison's need for security and the prisoner's First Amendment rights, courts have approved prison policies which either provide for legal mail to be opened in the presence of the inmate, see Wolff v. McDonnell, 418 U.S. 539, 577 (1974), or which allow prison officials to open legal mail outside of the inmate's presence unless the inmate specifically requests another arrangement. Knop, 977 F.2d at 1012.

Not all mail that a prisoner receives from a legal source, however, is afforded First Amendment protection as "legal mail." Sallier, 343 F.3d at 874. Even mail from legal sources may have little or nothing to do with protecting a prisoner's access to the courts or protecting an inmate's communications with his attorney. The question of whether a particular piece of mail is "legal mail" is a question of law which must be determined by the court. Id. at 873. For federal prisoners, legal mail has been defined as correspondence received from the President, Vice President, Attorneys, Members of the U.S. Congress, Embassies and Consulates, the U.S. Department of Justice (excluding the Bureau of Prisons but including the U.S. Attorneys), other Federal Law Enforcement Officers, State Attorneys General, Prosecuting Attorneys, Governors, U.S. Courts (including U.S. Probation Officers) and State Courts. 28 C.F.R. §540.2(c). For incoming correspondence to be processed under special mail procedures, the sender must be

adequately identified on the envelope and the front of the envelope must be marked "special mail–open only in the presence of the inmate."  28 C.F.R. §540.2(c); 28 U.S.C. §540.18(a).  In the absence of either adequate identification of the sender or the "special mail notation," the regulations permit prison staff to treat it as general correspondence.  28 U.S.C. §540.18(b).

None of the remaining letters are accorded constitutional protection under these criteria.  The letters from the United States Department of Labor (Letter #15), the Michigan Attorney Grievance Commission (Letter #18), OSHA (Letter #20), the Office of Professional Responsibility (Letter #21), and the National Mediation Board (Letter #22) are not entities which can originate legal mail under the statute.  The remaining Letters (#16 from the Golden Colorado District Attorney, #17 from the Department of Justice Criminal Division, and #19 from the U.S. Attorney's Office) do not contain a "special mail" notation or any other indication that the contents of the letters contain privileged materials.  Absent these qualifications, the mail room staff may treat the mail as general mail.  See Meckley v. FCI Lexington Mailroom Staff, No. 92-6105, 1993 WL 187945 (6th Cir. May 28, 1993)(upholding the constitutionality of 28 C.F.R. §540.18); Merriweather v. Zamora, No. 04-71706, 2005 WL 2448946 at *3 (E.D. Mich. May 4, 2005)(finding the a federal prisoner's mail that did not indicate "legal mail-open only in the presence of inmate" or substantially similar language was not protected as "legal mail").

Moreover, even if these letters were considered to be legal mail, Mr. Moes has not stated a claim against most of the defendants.  Plaintiff cannot establish the liability of any defendant absent a clear showing that the defendant was personally involved in the activities which form the basis of the alleged unconstitutional behavior.  Rizzo v. Goode, 423 U.S. 362, 371 (1976); Mullins v. Hainesworth, No. 95-3186, 1995 WL 559381 (6th Cir. Sept. 20, 1995).  There are no allegations in the complaint that Unit Manager Richard E. Milton, Counselor Charles C. Crissman,

Remedy Clerk Amy Fusco, Executive Assistant Steve Lake, Associate Warden Brian Hertel, Warden Mark Bezy actively participated in the opening of Mr. Moes mail. Instead, they appear to be included as defendants because they did not respond to his grievances or responded in a manner that did not agree with his position. Responding to a grievance or otherwise participating in the grievance procedure is insufficient to trigger liability under 42 U.S.C. § 1983. Shehee v. Luttrell, 199 F.3d. 295, 300 (6th Cir. 1999). The complaint simply contains no facts which reasonably associate these defendants to any of the claims set forth by plaintiff.

### Grievances

While it is not entirely clear from the pleading, it appears that Mr. Moes is attempting to assert a cause of action against the defendants for failing to facilitate his use of the grievance system. As a rule, there is no constitutionally protected interest in unfettered access to the prison grievance system under the due process clause. Walker v. Michigan Dept. of Corrections, No. 04-1347, 128 Fed. Appx. 441, 445 (6th Cir. April 1, 2005); see Young v. Gundy, 30 Fed.Appx. 568, 569-70 (6th Cir. 2002); Antonelli v. Sheahan, 81 F.3d 1422, 1430 (7th Cir. 1996); Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir.1993); Mann v. Adams, 855 F.2d 639, 640 (9th Cir.1988). Claims for interference with the grievance system will arise, if at all, under the First Amendment either in a claim for denial of access to the courts or for retaliation. Mr. Moes has not stated a claim for either of these causes of action.

### a. Access to Courts

To state a claim for denial of access to the courts, Mr. Moes must demonstrate he suffered actual injury as a result of this policy. Lewis v. Casey, 518 U.S. 343, 351 (1996). Furthermore, the injury requirement is not satisfied by just any type of frustrated legal claim. Id. A prison official may be held liable for the deprivation of this First Amendment right only to the

7

extent that his or her actions prevented a prisoner from pursuing or caused the rejection of a specific non-frivolous direct appeals, habeas corpus applications, or civil rights actions. Id.; Hadix v. Johnson, 182 F.3d 400, 405 (6th Cir. 1999). "Impairment of any other litigating capacity is simply one of the incidental, and perfectly constitutional, consequences of conviction and incarceration."[3] Lewis at 355.

In support of the claim of actual injury, plaintiff states "[i]t is a well established fact that all available [administrative remedies] must be exhausted before gaining entry to the courts." He contends that Defendants Crissman and Milton refused to provide him with grievance forms, and did not appropriately process grievance forms he submitted. Nevertheless, these allegations do not suggest a constitutional injury. There is no indication that conduct of any named defendant caused the rejection of or prevented him from filing an actual case. As an initial indication, Mr. Moes filed the within action and attached to it sufficient documentation to arguably suggest that he exhausted his administrative remedies. Moreover, even if the defendants had failed to respond to grievances, access to the courts would not have been denied. Following the lead of the four other circuits, the Sixth Circuit has concluded that administrative remedies are exhausted when a prisoner adequately demonstrates that prison officials failed to timely respond to a properly filed grievance. Boyd v. Corrections Corp. of America, 380 F.3d 989, 996 (6th Cir. 2004); see Jernigan v. Stuchell, 304 F.3d 1030, 1032 (10th Cir.2002) ("[W]e agree that the failure to respond to a grievance within the time limits contained in the grievance policy renders an administrative remedy unavailable[.]");

---

[3] The Supreme Court stressed that the First Amendment does not guarantee prisoners the ability to transform themselves into "litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement." Lewis, 518 U.S. at 355.

8

Lewis v. Washington, 300 F.3d 829, 833 (7th Cir.2002) ("We join the Eighth and Fifth circuits on this issue because we refuse to interpret the PLRA 'so narrowly as to ... permit [prison officials] to exploit the exhaustion requirement through indefinite delay in responding to grievances.' "); Foulk v. Charrier, 262 F.3d 687, 698 (8th Cir.2001) ( "[O]nce [the prison] failed to respond to [the prisoner's written grievance], no further administrative proceedings were 'available' to him."); Powe v. Ennis, 177 F.3d 393, 394 (5th Cir.1999) (per curiam) ("A prisoner's administrative remedies are deemed exhausted when a valid grievance has been filed and the state's time for responding thereto has expired."). Mr. Moes provides no allegation in his pleading to suggest that any of the named defendants prevented him from filing his action or caused the rejection of his claims. See Hadix, 182 F.3d at 405. His access to the courts claims must therefore be dismissed.

### b. Retaliation

Mr. Moes has also failed to state a claim for retaliation. A prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penalogical objective of the corrections system. Pell v. Procunier, 417 U.S. 817 (1974). Thus, prison officials may not retaliate against an inmate for exercising a constitutionally protected right. See Crocker v. Tennessee Secondary School Athletic Ass'n, 980 F.2d 382 (6th Cir. 1992). To set forth a prima facie case of retaliation, plaintiff must establish: 1) he engaged in protected conduct; 2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; and 3) that a causal connection exists between the first two elements. Thaddeus-X v. Blatter, 175 F.3d 378, 394 (6th Cir. 1999). Plaintiff fails to satisfy these criteria.

An inmate has a First Amendment right to file grievances against prison officials. See Noble v. Schmitt, 87 F.3d 157, 162 (6th Cir. 1996). However, to state a constitutional claim,

plaintiff must not only show he exercised this First Amendment right, but also must demonstrate that adverse actions were taken against him because he filed the grievances. Thaddeus-X, 175 F.3d at 394. Plaintiff alleges that Defendants Milton and Crissman "retaliated against the Plaintiff by not issuing/hiding/stealing his remedy forms." (Compl. at 7.) He does not indicate what motivated the retaliation. Moreover, Mr. Moes attaches to his complaint copies of 36 grievances and responses. There is no indication in the pleading that the defendants acted with a retaliatory motive when they did not provide Mr. Moes with an unlimited supply of grievance forms. Thaddeus-X, 175 F.3d at 399. Legal conclusions alone are not sufficient to present a valid claim. Morgan v. Church's Fried Chicken, 829 F.2d 10, 12 (6th Cir. 1987); see also, Place v. Shepherd, 446 F.2d 1239, 1244 (6th Cir. 1971) (conclusory section 1983 claim dismissed). Mr. Moes has not set forth allegations which reasonably suggest that the defendants retaliated against him.

### c. Respondeat Superior

Finally, even if Mr. Moes had stated a claim under the First Amendment for denial of access to courts or retaliation, his claims against Remedy Clerk Amy Fusco, Executive Assistant Steve Lake, Associate Warden Brian Hertel, and Warden Mark Bezy would be dismissed. For an individual supervisor or employer to be found liable for the acts of an employee under § 1983, the acts of the employee must have been in accordance with some official policy or custom or when it can be shown that the supervisor encouraged the specific misconduct or in some way directly participated in it. See Monell v. Dept. of Social Services, 436 U.S. 658, 690-91 (1978); Hays v. Jefferson County, Ky., 668 F.2d 869 (6th Cir. 1982); Bellamy v. Bradley, 729 F.2d 416, 421 (6th Cir. 1984). Mr. Moes alleges that these defendants "were very much aware of Defendants Milton's and Crissman's activities...[and] failed to prevent/protect his First Amendment rights." (Compl. at 8.) The complaint contains no suggestion of a custom or policy of Amy Fusco, Steve Lake, Brian

Hertel, or Mark Bezy which may have resulted in the deprivation of a federally protected right of the plaintiff. There is also no suggestion that any of these individuals encouraged, acquiesced in, or directly participated in the conduct described in the complaint. His claims against these defendants appears to be based on their responses to his grievances. Again, participation in the grievance process is insufficient to trigger liability under 42 U.S.C. § 1983. Shehee, 199 F.3d. at 300.

## *Conclusion*

Accordingly, this action is dismissed pursuant to 28 U.S.C. §1915(e). The court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.[4]

IT IS SO ORDERED.

S/Peter C. Economus - 5/15/06
PETER C. ECONOMUS
UNITED STATES DISTRICT JUDGE

---

[4] 28 U.S.C. § 1915(a)(3) provides:

An appeal may not be taken in forma pauperis if the trial court certifies that it is not taken in good faith.